Alan S. Petlak (SBN 179362)
petlaka@ballardspahr.com
Rosina M. Hernandez (SBN 256303)
hernandezr@ballardspahr.com
BALLARD SPAHR LLP
2029 Century Park East, Suite 800
Los Angeles, CA  90067-2909
Telephone: (424) 204-4400
Facsimile: (424) 204-4350

Christopher J. Willis (admitted *pro hac vice*)
willisc@ballardspahr.com
Stefanie H. Jackman (admitted *pro hac vice*)
jackmans@ballardspahr.com
Ross M. Speier (admitted *pro hac vice*)
speierr@ballardspahr.com
BALLARD SPAHR LLP
999 Peachtree Street, Suite 1000
Atlanta, GA 30309
Telephone: (678) 420-9300
Facsimile: (678) 420-9301

Attorneys for Defendant
Mutual of Omaha Bank

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### EASTERN DIVISION

| | |
|---|---|
| CHRISTINA and JOHN LABAJO, on Behalf of Themselves and All Others Similarly Situated,<br><br>                    Plaintiffs,<br><br>v.<br><br>FIRST INTERNATIONAL BANK & TRUST, and MUTUAL OF OMAHA BANK,<br><br>                    Defendants. | Case No. 5:13-cv-01861-VAP (DTBx)<br><br>[Assigned to the Hon. Virginia A. Phillips]<br><br>**DEFENDANT MUTUAL OF OMAHA BANK'S NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>**[DECLARATION OF WES SUMMA FILED CONCURRENTLY HEREWITH]**<br><br>Date:          March 10, 2014<br>Time:         2:00 p.m.<br>Ctrm.:        2<br><br>**Action Filed:  October 15, 2013** |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on March 10, 2014 at 2:00 p.m., or as soon thereafter as the matter may be heard, before the Honorable Virginia A. Phillips, in Courtroom 2 of the above-entitled Court, located at 3470 Twelfth Street, Riverside, California 92501, Defendant Mutual of Omaha Bank ("Mutual of Omaha") will and hereby does move for an order, pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 1-16, to compel arbitration, and to dismiss this action or, in the alternative, to stay this action pending the outcome of the arbitration.

This motion is based upon this Notice of Motion and Motion, the attached Memorandum of Points and Authorities, the concurrently-filed Declaration of Wes Summa and exhibit thereto, all other pleadings and papers on file herein, and on such other argument and evidence as may be presented to the Court.

This motion is made following the conference of counsel pursuant to L.R. 7-3 which took place on January 3, 2014.

DATED:  January 10, 2014

Alan S. Petlak
Christopher J. Willis, Admitted *Pro Hac Vice*
Stefanie H. Jackman, Admitted *Pro Hac Vice*
Rosina M. Hernandez
Ross M. Speier, Admitted *Pro Hac Vice*
BALLARD SPAHR LLP


 /s/ Alan S. Petlak
Alan S. Petlak

Attorneys for Defendant
Mutual of Omaha Bank

1

# **TABLE OF CONTENTS**

**Page(s)**

I.     BACKGROUND ...................................................................................2

    A.    Plaintiffs Agreed To Arbitrate All Claims Relating To The Loan. ......2

    B.    Plaintiffs Filed Suit Against Mutual Of Omaha Despite The Express Arbitration Agreement. ...........................................................4

II.    ARGUMENT ......................................................................................6

    A.    Plaintiffs Agreed To Arbitrate This Dispute.........................................6

        1.    Plaintiffs are bound to arbitrate this dispute.............................7

        2.    The plain terms of the arbitration agreement, which are broadly construed under the FAA, cover this dispute. ...............9

        3.    The language designating NAF as the arbitration forum does not void the arbitration agreement. ...................................10

    B.    Any Dispute As To The Validity Or Scope Of The Arbitration Agreement Should Be Decided By The Arbitrator...........................12

    C.    Even If The Court Addresses Whether This Dispute Is Within The Scope Of The Arbitration Agreement, Plaintiffs Cannot Avoid Arbitration By Suing Mutual Of Omaha Instead Of The Lender. ...................................................................................................13

        1.    Mutual of Omaha is a third-party beneficiary of the arbitration agreement.............................................................14

        2.    Plaintiffs' suit is predicated on the allegation that Mutual of Omaha is an agent of Sandpoint.........................................15

        3.    Plaintiffs are equitably estopped from evading the arbitration agreement.............................................................17

    D.    The Court Should Dismiss Or Stay This Action Pending The Outcome Of The Arbitration..............................................................20

III.    CONCLUSION ................................................................................21

i

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Amisil Holdings Ltd. v. Clarium Cap. Mgmt. LLC*,
622 F. Supp. 2d 825 (N.D. Cal. 2007) ................................................................16

*Arthur Andersen LLP v. Carlisle*,
556 U.S. 624 (2009) ............................................................................................8

*AT&T Techs., Inc. v. Commc'ns Workers of Am.*,
475 U.S. 643 (1986) ....................................................................................12, 13

*Atlantic Nat. Trust LLC v. Mt. Hawley Ins. Co.*,
621 F.3d 931 (9th Cir. 2010).............................................................................10

*Balar Equip. Corp. v. VT Leeboy, Inc.*,
336 Fed. Appx. 688 (9th Cir. 2009) ....................................................................9

*Beard v. Santander Consumer USA, Inc.*,
No. 1:11-cv-11-1815,
2012 WL 1292576 (E.D. Cal. Apr. 16, 2012).....................................................7

*Bennett v. Liberty Nat'l Fire Ins. Co.*,
968 F.2d 969 (9th Cir. 1992)...............................................................................6

*Blinco v. Green Tree Servicing LLC*,
400 F.3d 1308 (11th Cir. 2005)...........................................................................8

*Bosinger v. Phillips Plastics Corp.*,
57 F. Supp. 2d 986 (S.D. Cal. 1999) .................................................................20

*Boston Telecomms. Group, Inc., v. Deliotte Touche Tohmatsu*,
278 F. Supp. 2d 1041 (N.D. Cal. 2003) ............................................................19

*Britton v. Co-op Banking Group*,
4 F.3d 742 (9th Cir. 1993)...........................................................................15, 16

*Brown v. Gen. Steel Domestic Sales, LLC*,
No. CV 08-00779,
2008 WL 2128057 (C.D. Cal. May 19, 2008) ..................................................18

*Brown v. ITT Consumer Fin. Corp.*,
211 F.3d 1217 (11th Cir. 2000)........................................................................12

*Buckeye Check Cashing, Inc. v. Cardegna*,
546 U.S. 440 (2006) ..........................................................................................18

*Cardenas v. AmeriCredit Financial Services, Inc.*,
C 09-04978,
2011 WL 2884980 (N.D. Cal. Jul. 19, 2011).............................................7, 8, 18

ii

*Carideo v. Dell, Inc.*,
  C06-1772,
  2009 WL 3485933 (W.D. Wash. Oct. 26, 2009) .................................................. 11

*Chastain v. Union Sec. Life Ins. Co.*,
  502 F. Supp. 2d 1072 (C.D. Cal. 2007) .......................................................... 17

*Chiron Corp. v. Ortho Diagnostic Sys., Inc.*,
  207 F.3d 1126 (9th Cir. 2000) .................................................................. 6, 7

*Ferrini v. Cambece*,
  2:12-CV-01954,
  2013 WL 2421717 (E.D. Cal. Jun. 3, 2013) ................................................... 11

*First Options of Chicago, Inc. v. Kaplan*,
  514 U.S. 938 (1995) ......................................................................... 6, 12

*Garcia v. Stonehenge, Ltd.*,
  No. C-97-4368,
  1998 WL 118177 (N.D. Cal. Mar. 2, 1998) .................................................. 14, 18

*Granite Rock Co. v. Int'l Bhd. Of Teamsters, et al.*,
  561 U.S. __ (2010) ............................................................................. 9

*Granite Rock Co. v. Int'l Bhd. of Teamsters, Local 287*,
  546 F.3d 1169 (9th Cir. 2008) .................................................................. 9

*Green Tree Fin. Corp.-Ala. v. Randolph*,
  531 U.S. 79 (2000) ............................................................................. 6

*Green v. U.S. Cash Advance Illinois, LLC*,
  724 F.3d 787 (7th Cir. 2013) .................................................................. 11

*Hansen v. KPMG, LLP*,
  No. CV 04-10525,
  2005 WL 6051705 (C.D. Cal. Mar. 29, 2005) ............................................... 19, 20

*In re Apple & AT&TM Antitrust Litig.*,
  826 F. Supp. 2d 1168 (N.D. Cal. 2011) .................................................... 19, 20

*In re Apple iPhone 3G Prods. Liability Litig.*,
  859 F. Supp. 2d 1084 (N.D. Cal. 2012) .................................................... 17, 18

*In re Gateway LX6810 Computer Products Litig.*,
  SACV10-1563-JST,
  2011 WL 3099862 (C.D. Cal. July 21, 2011) ............................................... 11, 12

*Khan v. Dell Inc.*,
  669 F.3d 350 (3d Cir. 2012) .................................................................. 12

*Kramer v. Toyota Motor Corp.*,
  705 F.3d 1122 (9th Cir. 2013) ................................................................ 13

iii

*Larson v. Speetjens*,
  C05-3176,
  2006 WL 2567873 (N.D. Cal. Sept. 5, 2006) ........................................8

*Laster v. T-Mobile USA, Inc.*,
  No. 05cv1167,
  2013 WL 4082682 (S.D. Cal. Jul. 19, 2013) .....................................16

*Lawson v. Life of the South Ins. Co.*,
  648 F.3d 1166 (11th Cir. 2011)........................................................8

*Letizia v. Prudential Bache Sec., Inc.*,
  802 F.2d 1185 (9th Cir. 1986)................................................14, 15

*Lewis v. UBS Fin. Servs.*,
  818 F. Supp. 2d 1161 (N.D. Cal. 2011) ...........................................21

*Lopez v. Am. Express Bank, FSB*,
  No. CV 09-07335,
  2010 WL 2628659 (C.D. Cal. Jun. 2, 2010) .......................................1

*Mastrobuono v. Shearson Lehman Hutton, Inc.*,
  514 U.S. 52 (1995) ...................................................................6

*McGuire, Cornwell & Blakely v. Grider*,
  771 F. Supp. 319 (D. Colo. 1991) ..................................................12

*McLeod v. Ford Motor Co.*,
  No. EDCV 04-1255-VAP (SGLx),
  2005 WL 3763354 (C.D. Cal. Apr. 14, 2005) ..............................14, 17

*Momot v. Mastro*,
  652 F.3d 982 (9th Cir. 2011).......................................................13

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
  460 U.S. 1 (1983) .....................................................................6

*Mundi v. Union Sec. Life Ins. Co.*,
  555 F.3d 1042 (9th Cir. 2009)......................................................17

*NS Holdings LLC v. Am. Int'l Group Inc.*,
  No. SACV 10-1132,
  2010 WL 4718895 (C.D. Cal. Nov. 15, 2010)....................................18

*Reddam v. KPMG LLP*,
  457 F.3d 1054 (9th Cir. 2006)......................................................10

*Reddam v. KPMG LLP*,
  No. SA CV 04-1227-GLT,
  2004 WL 3761875 (C.D. Cal. Dec. 14, 2004)).................................16

*Rent-A-Center W., Inc. v. Jackson*,
  561 U.S. ___ (2010) .................................................................12

iv

*Robinson v. Isaacs*,
No. 11CV1021 JLS,
2011 WL 4862420 (S.D. Cal. Oct. 12, 2011) .......................................................19

*Rosas v. Macy's, Inc.*,
No. CV11-7318,
2012 WL 3656274 (C.D. Cal. Aug. 24, 2012) .......................................................7

*Selby v. Deutsche Bank Trust Co.*,
12CV01562,
2013 WL 1315841 (S.D. Cal. Mar. 28, 2013) .................................................10, 11

*Simpson v. Pulte Home Corp.*,
No. C 11-5376,
2012 WL 1604840 (N.D. Cal. May 7, 2012) .......................................................17

*Sparling v. Hoffman Const. Co., Inc.*,
864 F.2d 635 (9th Cir. 1988) ...........................................................................21

*United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*,
363 U.S. 574 (1960) ..................................................................................9, 15

*Wagner v. Stratton Oakmont, Inc.*,
83 F.3d 1046 (9th Cir. 1996) ............................................................................6

*Washington Mut. Fin. Group, LLC v. Bailey*,
364 F.3d 260 (5th Cir. 2004) ............................................................................8

**State Cases**

*Alling v. Universal Mfg. Corp.*,
5 Cal. App. 4th 1412 (1992) ...........................................................................14

*Brinton v. Bankers Pension Servs., Inc.*,
76 Cal. App. 4th 550 (1999) ...........................................................................14

**Statutes**

15 U.S.C. § 7001(a)(1) ...................................................................................7

9 U.S.C. § 2 ..............................................................................................6

9 U.S.C. § 3 .............................................................................................21

9 U.S.C. § 5 .............................................................................................12

# MEMORANDUM OF POINTS AND AUTHORITIES
## PRELIMINARY STATEMENT

This dispute belongs in arbitration, not in court.[1] In bringing this action, Plaintiffs Christina and John Labajo ("Mrs. Labajo", "Mr. Labajo", and collectively, "Plaintiffs") ignore an express, written agreement to arbitrate the claims at issue in this litigation executed by Mr. Labajo in connection with receiving the loan that forms the basis of their claims. Instead, despite Mr. Labajo's agreement to arbitrate all claims regarding the loan, Plaintiffs bring this putative class action lawsuit alleging that the loan Mr. Labajo obtained from a non-party lender was invalid and illegal under California law. Further, Plaintiffs attempt to avoid the arbitration agreement executed by Mr. Labajo by bringing suit against Defendant Mutual of Omaha Bank ("Mutual of Omaha"), who Plaintiffs allege performed the routine banking function of originating ACH transactions from Plaintiff that were initiated by a non-party lender, instead of suing the lender directly.[2]

Plaintiffs' attempted end-run around the arbitration agreement fails under the plain language of the agreement. Mr. Labajo agreed to arbitrate not only claims directly made against the lender, but also "any and all claims . . . against [the

---

[1] Defendant Mutual of Omaha Bank relies on this motion to compel arbitration as its responsive pleading. *See, e.g., Lopez v. Am. Express Bank, FSB*, No. CV 09-07335, 2010 WL 2628659, at *2 n.4 (C.D. Cal. Jun. 2, 2010) ("Courts have traditionally entertained certain types of pre-answer motion[s] - such as a motion to compel arbitration as sufficient responsive pleadings despite its absence from . . . Federal Rule of Civil Procedure ['Rule'] 12(b), which concerns responsive pleadings.") (internal citation omitted). Mutual of Omaha reserves the right to challenge the legal sufficiency of Plaintiffs' claims in a separate motion to dismiss if this motion is denied.

[2] Although both Plaintiffs are prosecuting this action against Mutual of Omaha, the Complaint does not allege that Mrs. Labajo ever obtained a loan that was handled in any way by Mutual of Omaha. Rather, the only allegations against Mutual of Omaha in the Complaint concern a loan made to Mr. Labajo. *See* Compl. ¶¶ 83-98. Accordingly, Mrs. Labajo does not appear to actually assert any claims as to Mutual of Omaha and a dismissal in favor of Mutual of Omaha as to Mrs. Labajo is appropriate under Fed. R. Civ. P. 12(b)(6). However, as explained in more detail in § II.A.1 below, to the extent that Mrs. Labajo does attempt to allege any claims against Mutual of Omaha, she should also be compelled to arbitrate any such claims because those claims necessarily arise out of and relate to the loan agreement containing the arbitration clause executed by Mr. Labajo.

1

lender] (or the employees, officers, directors, agents, servicers or assigns of [the lender]), . . . regarding this loan or any other loan [Mr. Labajo] previously or may later obtain from [Sandpoint] . . . ." Further, to the extent that Plaintiffs dispute that plain language, the arbitration agreement further provides that disputes about the scope of the agreement should be decided by the arbitrator, and not the Court.

Moreover, courts routinely require arbitration of claims against non-signatory third parties in exactly these circumstances: where the language of the arbitration agreement covers such third-party claims, or where the claim is intertwined with the very agreement in which the arbitration clause appears. To hold otherwise would permit a party to evade an arbitration agreement by suing another entity performing an ancillary, but essential, duty to the transaction. The Federal Arbitration Act does not authorize this type of end-run around an agreement to arbitrate and for these reasons, Mutual of Omaha respectfully requests that the Court compel arbitration and dismiss or stay this action.

## I.   BACKGROUND

### A.   Plaintiffs Agreed To Arbitrate All Claims Relating To The Loan.

On January 27, 2012, Mr. Labajo applied for and obtained a $300 loan from Sandpoint Capital, LLC ("Sandpoint").[3] Exhibit A to the Declaration of Wes Summa ("Summa Dec.") at pp. 2, 4, filed concurrently herewith.[4] In connection with obtaining the loan from Sandpoint, Mr. Labajo twice agreed to arbitrate any claim relating to the loan:  first at the application stage, and again when he signed

---

[3] Sandpoint is based in Charleton, Nevis, West Indies and operates an online lending business. Compl. ¶ 15(b).

[4] In the Complaint, Plaintiffs allege that Mr. Labajo obtained this loan "[o]n or about January 30, 2013" but otherwise allege the exact same loan and repayment terms as those set for in the loan agreement attached as Exhibit A to the Summa Dec. *Compare* Compl. ¶¶ 93-97 *with* Summa Dec., Ex. A at p. 4.  Accordingly, the Complaint appears to contain a typographical error with regard to the year Sandpoint originated Mr. Labajo's loan. Moreover, the arbitration clause expressly provides that it applies to any prior or future loans obtained by Mr. Labajo from Sandpoint, so even in the event Plaintiffs can demonstrate there is no typographical error, their claims remain subject to arbitration.  Summa Dec., Ex. A at pp. 2, 4.

2

the loan agreement. Both Mr. Labajo's loan application ("Loan Application") and Loan Note and Disclosure ("Loan Agreement") contain the same clause in which Mr. Labajo agreed to arbitrate:

- "[A]ny and all claims, disputes or controversies between you and us, *any claim by either of us against the other* (*or the employees, officers, directors, agents, servicers or assigns of the other*), . . . regarding this loan or any other loan you previously or may later obtain from us, . . . *whether under common law or pursuant to federal, state or local statute, regulation or ordinance*, including *disputes regarding the matters subject to arbitration* . . . ."

- "All disputes including any Representative Claims against us *and/or related third parties* shall be resolved by binding arbitration only on an individual basis with you."

- "This agreement to arbitrate all disputes *shall apply no matter by whom or against whom the claim is filed*."

- "This arbitration agreement is made pursuant to a transaction involving interstate commerce. *It shall be governed by the Federal Arbitration Act, 9 U.S.C. Sections 1-16*."

Summa Dec., Ex. A at pp. 2, 4 (emphasis added). Also prominently set forth in both the Loan Application and Loan Agreement in bold, capital letters, is this statement:

**NOTICE: YOU AND WE WOULD HAVE HAD A RIGHT OR OPPORTUNITY TO LITIGATE DISPUTES THROUGH A COURT AND HAVE A JUDGE OR JURY DECIDE THE DISPUTES BUT HAVE AGREED INSTEAD TO RESOLVE DISPUTES THROUGH BINDING ARBITRATION.**

*Id.* (emphasis in original). Then, immediately above the signature line in both the Loan Application and the Loan Agreement, it states that the borrower also "agree[s]

to the Agreement to Arbitrate All Disputes and the Agreement Not to Bring, Join or Participate in Class Actions." *Id.*

In addition to the arbitration provisions and related disclosures listed above, the Loan Agreement also contains several additional disclosures and notifications, placed prominently above and next to the signature line, regarding the arbitration agreement.  Specifically, these disclosures state by signing the Loan Agreement, Mr. Labajo "AGREE[S] TO ALL OF THE TERMS OF THE NOTE, INCLUDING THE AGREEMENT TO ARBITRATE ALL DISPUTES" and that "[b]y acknowledging the typed signature below, you agree all of the loan terms are acceptable to you." *Id.* at p. 4 (emphasis in original). Mr. Labajo further manifested his acceptance by accepting the $300 in loan proceeds. Compl. ¶¶ 93, 97.

## B.   Plaintiffs Filed Suit Against Mutual Of Omaha Despite The Express Arbitration Agreement.

Ignoring the arbitration agreement set forth in the Loan Application and Loan Agreement, Plaintiffs filed this putative class action against Mutual of Omaha on October 15, 2013. *See generally* Compl.[5] Each of Plaintiffs' claims is predicated on the allegation that the loan Mr. Labajo obtained from Sandpoint was illegal. *Id.* ¶¶ 130-132, 136-138 (alleging Mutual of Omaha has participated in the collection of unlawful debts that are unenforceable under California state laws against usury); *id.* ¶ 142 (alleging Mutual of Omaha "repeatedly and knowingly aided and abetted [Sandpoint's] violations of California usury laws by causing to be collected usurious interest payments"); *id.* ¶ 160 (alleging Mutual of Omaha "violate[d] California's usury laws" by "conspiring with and aiding and abetting" Sandpoint to "charge

---

[5] Specifically, Plaintiffs assert eight claims against Mutual of Omaha for: (1) violation of RICO, 18 U.S.C. § 1962(c); (2) RICO conspiracy, 18 U.S.C. § 1962(d); (3) aiding and abetting usury, Cal. Civ. Code § 1916-1; (4) violation of the "unlawful prong" of California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 *et seq.*; (5) violation of the "unfair prong" of California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 et seq.; (6) assumpsit; (7) unjust enrichment; and (8) permanent injunctive relief. *See* Compl. ¶¶ 123-181.

4

illegal, usurious, and unconscionable fees"). Plaintiffs seek to represent a class defined as those "whose accounts were debited via an ACH entry by [] Mutual of Omaha Bank . . . on behalf of an Illegal Payday Lender in repayment of a loan which was usurious under California law." *Id*. ¶ 99.

Plaintiffs have not sued Sandpoint in this case. Instead, Plaintiffs only sued Mutual of Omaha for the routine banking services it allegedly provided to Sandpoint by transmitting a single ACH payment on Mr. Labajo's loan. *See* Compl. ¶ 97. Plaintiffs assert that, by processing this ACH payment for Sandpoint, Mutual of Omaha acted in concert with Sandpoint and served as its agent by processing allegedly illegal transactions on Sandpoint's behalf.[6] Specifically, Plaintiffs allege that Mutual of Omaha "participat[ed] in a scheme to access and utilize the [ACH] network to collect unlawful debts." *Id*. ¶ 1. Plaintiffs further allege that Mutual of Omaha did this by "working **on behalf of** [lenders] to 'originate' ACH entries that represent payday loan credits and debits to and from consumer checking accounts." *Id*. ¶ 8 (emphasis added); *see also id*. ¶ 9 (alleging that Defendants "know they are acting **on behalf of** Illegal Payday Lenders and that the entries they originate on the ACH Network on behalf of Illegal Payday Lenders will credit or debit funds in states in which the Illegal Payday Lenders' loans are illegal and unenforceable") (emphasis added); *see also id*. ¶¶ 93-98. Plaintiffs then claim that "it would be impossible" for Sandpoint to deposit loan proceeds or debit loan payments without Mutual of Omaha's "willingness to allow" it "to access the ACH Network." *Id*. ¶ 7.

---

[6] According to the Complaint, consumers who wish to make electronic payments, whether for a loan, an electricity bill, or the like, can authorize merchants to initiate Automated Clearing House ("ACH") transactions to debit money directly from their bank accounts. *See* Compl. ¶ 35. Here, Mr. Labajo authorized Sandpoint to initiate ACH transactions from his bank account in order to repay his loan. *Id*. ¶¶ 38, 93. To accomplish such a request, a lender submits an ACH debit request to a bank (here, Mutual of Omaha) and the bank then submits the transaction to be processed through the ACH network, ultimately resulting in the funds being debited from the customer's account. Compl. ¶¶ 35-38.

## II.    ARGUMENT

### A.    Plaintiffs Agreed To Arbitrate This Dispute.

An agreement to arbitrate is "a matter of contract: 'it is a way to resolve those disputes . . . that the parties have agreed to submit to arbitration.'" *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000) (quoting *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943 (1995)). Where the arbitration agreement is contained in "a contract evidencing a transaction involving commerce," it is subject to the Federal Arbitration Act ("FAA"). 9 U.S.C. § 2. Here, the arbitration clause agreed to by Mr. Labajo states that it "is made pursuant to a transaction involving interstate commerce" and "shall be governed by the Federal Arbitration Act, 9 U.S.C. Sections 1-16. Summa Dec., Ex. A at pp. 2, 4.  In addition, the Complaint alleges that Sandpoint is located in Nevis, in the West Indies, and that ACH transactions occurred between Mutual of Omaha and Plaintiffs' bank, all of which underlines the fact that the loan transaction involved interstate commerce.

The FAA was enacted to promote the enforcement of privately entered agreements to arbitrate "according to their terms." *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 54, 115 S. Ct. 1212, 1214, 131 L. Ed. 2d 76 (1995). In passing the FAA, Congress established a strong national policy in favor of arbitration. *See, e.g., Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 24, 103 S. Ct. 927, 941, 74 L. Ed. 2d 765 (1983)*; Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 89, 121 S. Ct. 513, 521, 148 L. Ed. 2d 373 (2000); *Bennett v. Liberty Nat'l Fire Ins. Co.*, 968 F.2d 969, 971 (9th Cir. 1992). In evaluating a motion to compel, doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration. *E.g., Moses H. Cone Mem'l Hosp., 460 U.S. at 24-25; Wagner v. Stratton Oakmont, Inc.*, 83 F.3d 1046, 1049 (9th Cir. 1996) (any interpretation must "giv[e] due regard to the federal policy in favor of arbitration by resolving ambiguities as to the scope of arbitration in favor of

MUTUAL OF OMAHA BANK'S NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION;
MEMORANDUM OF POINTS AND AUTHORITIES

arbitration.").

In deciding a motion to compel arbitration, the court considers only two issues:  (1) whether the parties entered into a valid arbitration agreement; and (2) whether the dispute falls within the language of the arbitration provision. *See Chiron Corp.*, 207 F.3d at 1130. As explained below, the Court should resolve both of these issues in favor of compelling arbitration in this case.

### 1.     Plaintiffs are bound to arbitrate this dispute.

In the Loan Application and the Loan Agreement, Mr. Labajo agreed to arbitrate "any claim by [him] against [Sandpoint] (or the employees, officers, directors, *agents, servicers* or assigns of [Sandpoint]). . . ."  Summa Dec., Ex. A at pp. 2, 4 (emphasis added). Mr. Labajo accepted the arbitration agreement at two stages in the loan process: first when he signed the Loan Application and again when he signed the Loan Agreement. *Id*. Moreover, when Mr. Labajo signed the Loan Application and the Loan Agreement, he also acknowledged that he had read and agreed to all of the terms therein.  *Id*.; *see* 15 U.S.C. § 7001(a)(1) ("[A] signature . . . may not be denied legal effect, validity, or enforceability solely because it is in electronic form."); *Rosas v. Macy's, Inc.*, No. CV11-7318, 2012 WL 3656274, at *6 (C.D. Cal. Aug. 24, 2012) (same).  Mr. Labajo further accepted the arbitration agreement by accepting and receiving the benefits thereunder (*see* Compl.§§ 93, 97). *See*, *e.g*., *Beard v. Santander Consumer USA, Inc.*, No. 1:11-cv-11-1815, 2012 WL 1292576, at *12 (E.D. Cal. Apr. 16, 2012) ("[Plaintiff's] agreement for binding arbitration was part of a bargained-for exchange.  [Plaintiff], as the party who reaped the benefits of an agreement must also accept the agreement's accompanying burdens").  In sum, Mr. Labajo entered into a binding arbitration agreement that should be enforced by the Court.

Similarly, to the extent that Mrs. Labajo asserts any claims against Mutual of Omaha relating to Mr. Labajo's loan from Sandpoint, she too is bound to

arbitrate those claims. As the court explained in *Cardenas v. AmeriCredit Financial Services, Inc.*, C 09-04978, 2011 WL 2884980, at *4 (N.D. Cal. Jul. 19, 2011) "[t]he doctrine of equitable estoppel precludes [a nonsignatory] from avoiding the arbitration clause contained in the Agreement while simultaneously predicating her UCL claim on alleged infirmities of that document. . . . In other words, [the non-signatory] ***must accept both the benefits as well as the burdens of the Agreement, including its arbitration clause***." *Id.* (emphasis added) (citing *Blinco v. Green Tree Servicing LLC*, 400 F.3d 1308, 1312 (11th Cir. 2005) (a non-signatory was equitably estopped from challenging enforcement of the arbitration clause where her claims derived from the note)[7]; *Washington Mut. Fin. Group, LLC v. Bailey*, 364 F.3d 260, 267–68 (5th Cir. 2004) (a non-signatory could not "hav[e] it both ways" by "suing based upon one part of a transaction that she says grants her rights while simultaneously attempting to avoid other parts of the same transaction that she views as a burden-namely, the arbitration agreement")); *Larson v. Speetjens*, C05-3176, 2006 WL 2567873, at *7 (N.D. Cal. Sept. 5, 2006) (because the plaintiffs' claims were "inextricably intertwined with the Agreements," the non-signatory plaintiff "cannot seek to enforce the rights the [terms of the Agreement] provided them and avoid the requirement that any dispute arising out of the Agreements be arbitrated."). Here, any claims purportedly asserted by Mrs. Labajo necessarily arise, in their entirety, from the loan that Mr. Labajo obtained from Sandpoint and Mutual of Omaha's alleged actions in connection with assisting Sandpoint in servicing that loan. *See* Compl. ¶¶ 93-98. Therefore, to the extent Mrs. Labajo asserts any claims relating to this loan, they also are subject to arbitration.

---

[7] *Blinco* was abrogated on other grounds in *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 129 S. Ct. 1896, 173 L. Ed. 2d 832 (2009); *abrogation recognized by Lawson v. Life of the South Ins. Co.*, 648 F.3d 1166, 1171 (11th Cir. 2011).

## 2.      The plain terms of the arbitration agreement, which are broadly construed under the FAA, cover this dispute.

The FAA requires courts to construe arbitration clauses "very broadly." *See*, *e.g.*, *Granite Rock Co. v. Int'l Bhd. of Teamsters, Local* 287, 546 F.3d 1169, 1177 n.4 (9th Cir. 2008) [8]. Arbitration should be ordered "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582-83, 80 S. Ct. 1347, 4 L. Ed. 2d 1409 (1960); *Balar Equip. Corp. v. VT Leeboy*, Inc., 336 Fed. Appx. 688, 689 (9th Cir. 2009) (same). To say the least, the arbitration agreement in the Loan Agreement is "susceptible of an interpretation that covers the asserted dispute." Its plain language provides that Plaintiffs agree to arbitrate "any and all claims, disputes or controversies", including "any claim by either of us against the other (or the employees, officers, directors, *agents, servicers* or assigns of the other) . . . regarding this loan . . . ." Summa Dec., Ex. A at pp. 2, 4 (emphasis added). The agreement further states that "[a]ll disputes . . . against us *and/or related third parties* shall be resolved by binding arbitration" and "[t]his agreement to arbitrate all disputes *shall apply no matter by whom or against whom the claim is filed*." *Id.* (emphasis added).

Here, Plaintiffs' claims are all expressly predicated on the allegation that the Loan Agreement is illegal and therefore void and unenforceable. *See supra* § I.B; *see also* Compl. ¶¶ 15, 130, 136. Indeed, Plaintiffs' own allegations show that the claims against Mutual of Omaha are based on: (1) services that Mutual of Omaha provided to Sandpoint to effectuate the Loan Agreement; and (2) its role as a purported agent working on behalf of Sandpoint. *Id.* ¶¶ 1, 8 (alleging that Mutual of Omaha "participat[ed] in a scheme to access and utilize the Automated Clearing

---

[8] *Affirmed in part, and reversed in part on other grounds*, *Granite Rock Co. v. Int'l Bhd. Of Teamsters, et al.*, 561 U.S. __, 130 S. Ct. 2847, 177 L. Ed. 2d 567 (2010).

MUTUAL OF OMAHA BANK'S NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION;
MEMORANDUM OF POINTS AND AUTHORITIES

House ('ACH') network to collect unlawful debts" and "actively participate[d] in this unlawful scheme by working on behalf of" Sandpoint). According to Plaintiffs, "it would be impossible" for lenders such as Sandpoint to deposit loan proceeds or debit loan payments without Mutual of Omaha's "willingness to allow" Sandpoint to access the ACH Network. *Id.* ¶ 7. Plaintiffs' own allegations frame Mutual of Omaha as either an agent or servicer of Sandpoint, and Plaintiffs cannot now evade the arbitration agreement that expressly applies to servicers and agents and "related third parties" by suing Mutual of Omaha for the services it provided for Sandpoint on Mr. Labajo's loan.

### 3. The language designating NAF as the arbitration forum does not void the arbitration agreement.

The Loan Agreement states that the arbitration will be "by and under the Code of Procedure of the National Arbitration Forum ('NAF') in effect at the time the claim is filed." Summa Dec., Ex. A at p. 4. However, despite the current unavailability of the NAF, the arbitration clause is enforceable and a substitute arbitrator should be appointed. In determining whether to appoint a substitute arbitrator, a court must ask whether the choice of the specific arbitrator was "integral" to the arbitration agreement; that is, "whether the whole arbitration agreement becomes unenforceable if the chosen arbitrator cannot or will not act." *Reddam v. KPMG LLP*, 457 F.3d 1054, 1060 (9th Cir. 2006).[9] "Only if the choice of forum is an integral part of the agreement to arbitrate, rather than an 'ancillary logistical concern,' will the failure of the chosen forum preclude arbitration." *Id.*

Recently, the Southern District of California addressed this very issue in *Selby v. Deutsche Bank Trust Co.*, 12CV01562, 2013 WL 1315841, at *10 (S.D.

---

[9] *Reddam* was abrogated on other grounds in *Atlantic Nat. Trust LLC v. Mt. Hawley Ins. Co.*, 621 F.3d 931, 939 (9th Cir. 2010).

Cal. Mar. 28, 2013) noting that a court will "decline to appoint an alternate arbitrator as permitted by the FAA only when the original choice of forum was, 'so central to the arbitration agreement that the unavailability of that arbitrator [brings] the agreement to an end.'" In *Selby*, the agreement designated the NAF as the arbitrator and stated that the NAF Code of Procedure would govern; however, the court held that "there is no evidence suggesting the designation of NAF as the forum for arbitration was anything more than an 'ancillary logistical concern'" and that "[r]ather than being an integral part of the Agreement, NAF's designation appears to be simply part of the standard credit card agreement." *Id.* at *11. Moreover, the court held that "the Agreement does not include language to the effect that NAF would serve as the 'exclusive' or sole forum for arbitration." *Id*. Accordingly, the court concluded that "pursuant to the terms of Section 5 of the FAA, the inability of NAF to perform the arbitration permits the Court to appoint a substitute arbitrator." *Id*. at *12; *see also Ferrini v. Cambece*, 2:12-CV-01954, 2013 WL 2421717, at *3 (E.D. Cal. Jun. 3, 2013) ("where the arbitrator named in the arbitration agreement cannot or will not arbitrate the dispute, a court does not void the agreement but instead appoints a different arbitrator."); *In re Gateway LX6810 Computer Products Litig*., SACV10-1563-JST, 2011 WL 3099862, at *2 (C.D. Cal. July 21, 2011) (arbitrator appointment not integral where NAF designated as arbitrator but not expressly made the "exclusive forum"); *cf. Carideo v. Dell, Inc*., C06-1772, 2009 WL 3485933, at *4-5 (W.D. Wash. Oct. 26, 2009) *4-5 (selection of NAF only integral because clause provided that disputes must be resolved "EXCLUSIVELY" by NAF).

Likewise, here, the designation of the NAF is not "integral" to the arbitration clause because: (1) there is nothing to suggest that the parties intended that an arbitration before NAF was integral to the arbitration provisions; and (2) there is no language designating the NAF as the "exclusive" forum for arbitration or

that the parties did not intend to arbitrate if the NAF was unavailable. *See Green v. U.S. Cash Advance Illinois, LLC*, 724 F.3d 787, 790 (7th Cir. 2013) (rejecting argument that NAF's designation in the agreement should be read as "the National Arbitration Forum or no arbitration at all."). Indeed, courts from this and other circuits interpret the right to arbitration under the FAA broadly and recognize the general preference towards enforcing arbitration clauses notwithstanding an arbitrator's unavailability. *E.g., In re Gateway*, 2011 WL 3099862, at *1 ("federal courts are required to rigorously enforce an agreement to arbitrate."); *Khan v. Dell Inc.,* 669 F.3d 350, 354, 357 (3d Cir. 2012) (consistent with the "liberal federal policy in favor of arbitration," where a "contract's language does not indicate the parties' unambiguous intent not to arbitrate their disputes if NAF is unavailable[,] Section 5 of the FAA requires a court to address such unavailability by appointing a substitute arbitrator."); *Brown v. ITT Consumer Fin. Corp.*, 211 F.3d 1217, 1222 (11th Cir. 2000) (rejecting argument that arbitration agreement is void because the specified forum had dissolved; explaining that the FAA provides for the naming of a replacement arbitrator); *McGuire, Cornwell & Blakely v. Grider*, 771 F. Supp. 319, 320 (D. Colo. 1991) ("as a general rule, where the arbitrator named in the arbitration agreement cannot or will not arbitrate the dispute, a court does not void the agreement, but, instead appoints a different arbitrator."). Accordingly, the arbitration agreement is entirely enforceable, and the Court should appoint a substitute arbitrator in lieu of NAF under the FAA, 9 U.S.C. § 5.

**B.      Any Dispute As To The Validity Or Scope Of The Arbitration Agreement Should Be Decided By The Arbitrator.**

To the extent that Plaintiffs challenge the validity or scope of the arbitration agreement, the arbitration agreement expressly provides for this issue to be decided by the arbitrator, rather than the courts. "[P]arties can agree to arbitrate 'gateway' questions of 'arbitrability,'" including the validity and scope of the

arbitration agreement. *Rent-A-Center W., Inc. v. Jackson*, 561 U.S. __, 130 S. Ct. 2772, 2777, 177 L. Ed. 2d 403 (2010); *accord First Options of Chicago, Inc.*, 514 U.S. at 943, 115 S. Ct. at 1923; *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649, 106 S. Ct. 1415, 89 L. Ed. 2d 648 (1986); *Momot v. Mastro*, 652 F.3d 982, 988-89 (9th Cir. 2011). In fact, where the language of the contract delegates "the validity or application of any of the provisions of' the arbitration clause," such language serves as clear and unmistakable evidence of the parties' intent to delegate such issues to an arbitrator. *Momot*, 652 F.3d at 988; *accord AT&T Techs.*, 475 U.S. at 649 (courts should enforce agreements that "clearly and unmistakably" agree to arbitrate arbitrability).

Here, Mr. Labajo signed the Loan Agreement, which clearly and unmistakably requires arbitration of "any and all claims, disputes or controversies . . . arising from or relating to . . . this agreement to arbitrate all disputes, . . . including disputes regarding the matters subject to arbitration . . . ." Summa Dec., Ex. A at p. 4. The arbitration agreement in the Loan Agreement also states that it applies to "any claim by either of us against the other (or the employees, officers, directors, agents, servicers or assigns of the other. . . ." *Id.; cf. Kramer v. Toyota Motor Corp.*, 705 F.3d 1122, 1127 (9th Cir. 2013) (finding court had authority to decide arbitrability where arbitration clause only pertained to "'you or we'" and "no one else"). An arbitrator should thus resolve the validity and scope of the arbitration agreement.

    **C.**    **Even If The Court Addresses Whether This Dispute Is Within The Scope Of The Arbitration Agreement, Plaintiffs Cannot Avoid Arbitration By Suing Mutual Of Omaha Instead Of The Lender.**

Even if this Court concludes that it, not an arbitrator, should decide whether Plaintiffs' claims fall within the scope of the arbitration agreement, the result is the same: the motion to compel arbitration should be granted. Courts routinely permit non-signatories, like Mutual of Omaha, to enforce arbitration

agreements when: (1) the non-signatory is a third-party beneficiary of the agreement; (2) the claim at issue is based on conduct in which the non-signatory allegedly acted as an agent of the party with which the plaintiff agreed to arbitrate; or (3) when principles of equitable estoppel apply because the non-signatory is being sued for conduct that is intertwined with the agreement containing the arbitration provision. *See, e.g., Letizia v. Prudential Bache Sec., Inc.*, 802 F.2d 1185, 1187-88 (9th Cir. 1986); *McLeod v. Ford Motor Co.*, No. EDCV 04-1255-VAP (SGLx), 2005 WL 3763354, at *4 (C.D. Cal. Apr. 14, 2005). All of these bases apply here.

### 1. Mutual of Omaha is a third-party beneficiary of the arbitration agreement.

The strong federal policy favoring arbitration requires the enforcement of an arbitration agreement not just in favor of parties to the agreement, but also in favor of third-party beneficiaries. *See, e.g., Letizia*, 802 F.2d at 1187. To determine if a non-signatory is a third-party beneficiary, courts look to whether the parties to the contract intended to confer a benefit on the non-signatory party when contracting. *See Garcia v. Stonehenge, Ltd.*, No. C-97-4368, 1998 WL 118177, at *4 (N.D. Cal. Mar. 2, 1998); *see also Brinton v. Bankers Pension Servs., Inc.*, 76 Cal. App. 4th 550, 558 (1999) (explaining that a third party may qualify as a beneficiary under a contract where the contracting parties must have intended to benefit that individual and such intent appears from the terms of the agreement). In showing an arbitration agreement intended to benefit a third party, the agreement does not need to specifically "identify or refer to the alleged third party." *Garcia*, 1998 WL 118177, at *4 (citing *Alling v. Universal Mfg. Corp.*, 5 Cal. App. 4th 1412, 1440 (1992)).

Here, the arbitration agreement expressly applies to any third-party claims relating to the Loan Agreement to benefit third party servicers and agents,

MUTUAL OF OMAHA BANK'S NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION;
MEMORANDUM OF POINTS AND AUTHORITIES

such as Mutual of Omaha. Summa Dec., Ex. A at pp. 2, 4 (the arbitration agreement applies to "any claim by either of us against the other (or the employees, officers, directors, agents, servicers or assigns of the other)" and "[a]ll disputes . . . against us and/or related third parties") (emphasis added). Moreover, Plaintiffs allege that Mutual of Omaha acted "on behalf of" Sandpoint and provided services to Sandpoint in connection with Mr. Labajo's loan. *See, e.g.*, Compl. ¶¶ 6-9, 20. The Supreme Court has held that arbitration should be ordered "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *United Steelworkers of Am.*, 363 U.S. at 582-83, 80 S. Ct. 1353, 4 L. Ed. 2d at 1417 (emphasis added). It is impossible to imagine how the arbitration agreement here could be anything but susceptible to the interpretation that it covers claims against third party service providers, such as Mutual of Omaha.

### 2. Plaintiffs' suit is predicated on the allegation that Mutual of Omaha is an agent of Sandpoint.

Arbitration is also proper for a second and independent reason: Plaintiffs' suit is predicated on the action that Mutual of Omaha allegedly took as an agent "on behalf of" Sandpoint. *See, e.g.*, Compl. ¶¶ 6-9, 20. A non-signatory to an arbitration agreement may nevertheless compel arbitration where: (1) the wrongful acts of the agents for which they are sued relate to their behavior as agents or in their capacities as agents; and (2) the claims against the agents arise out of or relate to the contract containing the arbitration clause. *See, e.g., Letizia*, 802 F.2d at 1187-88; *Britton v. Co-op Banking Group*, 4 F.3d 742, 744 (9th Cir. 1993). That "rule is an outgrowth of the strong federal policy favoring arbitration." *Letizia*, 802 F.2d at 1188. Specifically, in *Letizia*, the Ninth Circuit held that the plaintiff's arbitration agreement with his brokerage firm required arbitration of plaintiff's claims against the individual employees at the brokerage firm who had allegedly mishandled his

accounts because "[a]ll of the individual defendants' allegedly wrongful acts related to their handling of [plaintiff's] securities account" and they were being sued based on their role as alleged agents of the brokerage firm. *Id.; see also Laster v. T-Mobile USA, Inc*., No. 05cv1167, 2013 WL 4082682, at *5 (S.D. Cal. Jul. 19, 2013) (finding defendant cell phone store could enforce arbitration clause in the plaintiff's contract with her cell phone provider, because the store was being sued for its role in selling the cell phone, to which the contract applied).

Here, Plaintiffs' claims against Mutual of Omaha are based entirely on the allegation that Mutual of Omaha performed a service for Sandpoint in connection with Mr. Labajo's loan. *Cf. Britton*, 4 F.3d at 743 (finding defendant was not a third-party beneficiary because "none of his allegedly wrongful acts arose out of or were related to the contract"). A non-signatory must be able to enforce an arbitration agreement in order to protect its purpose and value: "if a party could 'avoid the practical consequences of an agreement to arbitrate by naming nonsignatory parties as [defendants] in his complaint, . . . the effect of the rule requiring arbitration would, in effect, be nullified.'" *Amisil Holdings Ltd. v. Clarium Cap. Mgmt. LLC*, 622 F. Supp. 2d 825, 833 (N.D. Cal. 2007).

Moreover, Plaintiffs' Complaint repeatedly alleges an agency relationship existed between Mutual of Omaha and Sandpoint. *See Reddam v. KPMG LLP*, No. SA CV 04-1227-GLT, 2004 WL 3761875, at *4 (C.D. Cal. Dec. 14, 2004) (non-signatories may invoke arbitration as agents because plaintiff alleged that defendants "engaged in substantially interdependent and concerted misconduct" and "conspired together to devise and promote the transactions"). Plaintiffs contend that Mutual of Omaha "actively participate[d] in this unlawful scheme by working on behalf of Illegal Payday Lenders" (Compl. ¶ 8); and that "it would be impossible" for Sandpoint to deposit loan proceeds or debit loan payments without Mutual of Omaha's "willingness to allow" it "to access the ACH Network." *Id.* ¶ 7.

16

The Complaint further alleges that Mutual of Omaha "repeatedly and knowingly aided and abetted [Sandpoint's] violations of California usury laws by causing to be collected usurious interest payments" (*id.* ¶ 142); and "violate[d] California's usury laws" by "conspiring with and aiding and abetting" Sandpoint to "charge illegal, usurious, and unconscionable fees." *Id.* ¶ 160. In short, Plaintiffs' claims against Mutual of Omaha are based entirely on its conduct as an alleged agent of Sandpoint and, as a result, arbitration is proper in this case.

### 3. Plaintiffs are equitably estopped from evading the arbitration agreement.

There is also a third basis to compel arbitration here. Courts repeatedly hold that a non-signatory may compel a signatory to arbitrate where: (1) the subject matter of the dispute is "intertwined" with the contract providing for arbitration; and (2) the relationship among the parties justifies a conclusion that the party which agreed to arbitrate with another entity should be estopped from denying an obligation to arbitrate a similar dispute with the non-signatory. *See, e.g., Mundi v. Union Sec. Life Ins. Co.*, 555 F.3d 1042, 1045-46 (9th Cir. 2009); *In re Apple iPhone 3G Prods. Liability Litig.*, 859 F. Supp. 2d 1084, 1096 (N.D. Cal. 2012). "Plaintiff cannot artfully plead around an arbitration agreement simply by naming a non-signatory defendant who acted in concert with the signatory." *Chastain v. Union Sec. Life Ins. Co.*, 502 F. Supp. 2d 1072, 1081 (C.D. Cal. 2007).

Plaintiffs' dispute readily satisfies both prongs of this test. Each of Plaintiffs' claims relies on the allegation that the Loan Agreement was invalid under California usury law. As such, these claims are inextricably "intertwined" with the Loan Agreement containing the arbitration clause.[10] For example, in *In re Apple*

---

[10] *See, e.g., McLeod*, 2005 WL 3763354, at *4 (explaining that when charges against non-signatory "are based on the same facts and are inherently inseparable," a court may refer claims to arbitration); *Simpson v. Pulte Home Corp.*, No. C 11-5376, 2012 WL 1604840, at *6 (N.D. Cal. May 7, 2012) (plaintiffs may be compelled to arbitrate under equitable estoppel doctrine because plaintiffs allege defendants were involved in a joint enterprise designed to defraud plaintiffs and plaintiffs' claims are

1   *iPhone 3G Products Liability Litigation*, defendant Apple moved to compel

2   arbitration as a non-signatory to the plaintiffs' wireless services agreement –

3   containing the arbitration clause – with the defendant ATTM. *In re Apple iPhone 3G*

4   *Prods. Liability Litig.*, 859 F. Supp. 2d at 1093. The court granted the motion

5   because the plaintiffs' allegations were based on the service they received pursuant

6   to the wireless services agreement and therefore "necessarily implicate[d]" that

7   agreement. *Id.* at 1094. The same analysis applies here. Mutual of Omaha is being

8   sued entirely for its role in providing services to Sandpoint by processing the

9   payment Mr. Labajo made on his loan. Moreover, as the United States Supreme

10  Court has held, arbitration of disputes is required where, as here, the central claim is

11  that the agreement containing the arbitration provision is allegedly void or otherwise

12  illegal. *See Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 445-46, 126 S.

13  Ct. 1204, 1209, 163 L. Ed. 2d 1044 (2006) (holding that "as a matter of substantive

14  federal arbitration law, an arbitration provision is severable from the remainder of

15  the contract" and therefore, the issue of whether an allegedly usurious contract was

16  illegal was for the arbitrator to decide pursuant to the arbitration clause in the

17  allegedly illegal contract); *accord Cardenas v. AmeriCredit Fin. Servs. Inc.*, Nos. C

18  09–04978, C 09–04892, 2011 WL 2884980, at *4 (N.D. Cal. Jul. 19, 2011) ("The

19  doctrine of equitable estoppel precludes [plaintiff] from avoiding the arbitration

20  clause contained in the Agreement while simultaneously predicating her [claim] on

21  alleged infirmities of that document.").

22          This case also satisfies the second prong of the estoppel test: a

23  predicated upon the same course of conduct); *Brown v. Gen. Steel Domestic Sales,*
24  *LLC*, No. CV 08-00779, 2008 WL 2128057, at *7 (C.D. Cal. May 19, 2008) ("It is
    appropriate to compel arbitration where claims allege 'substantially interdependent
25  and concerted misconduct' . . . ."); *Garcia,* 1998 WL 118177 at *5 ("Because
    Stonehenge's claims against GDM and McQuaid are intimately related to its claims
26  against the estate, GDM and McQuaid have an additional basis for standing to
    enforce the arbitration clause."); *NS Holdings LLC v. Am. Int'l Group Inc.*, No.
27  SACV 10-1132, 2010 WL 4718895, at *4 (C.D. Cal. Nov. 15, 2010) (defendants
    may compel compliance with the insurance policy's arbitration provision because
28  plaintiff's claims involve issues that are intertwined with the policy agreement).

relationship among the parties that justifies enforcement of the arbitration provisions. Mutual of Omaha's role in processing the single repayment on Mr. Labajo's loan via an ACH transfer was set forth in the Loan Agreement. Specifically, in the Loan Agreement, Mr. Labajo provided his banking information to Sandpoint and authorized Sandpoint to use the ACH network—and thus Mutual of Omaha's services—to debit his bank account to repay the loan. Summa Dec., Ex. A at pp. 4, 5; Compl. ¶¶ 88, 93. This acknowledgment of the role of the ACH network in processing the loan transaction indicates that Plaintiffs understood—or should be charged with understanding—that any attack on the Loan Agreement based on the use of the ACH network in connection with that agreement would be just as subject to arbitration as any other challenge to their loan agreements.[11] Indeed, Plaintiffs' own allegations of concerted misconduct further estop them from denying that the relationship requirement is satisfied. *See Robinson v. Isaacs*, No. 11CV1021 JLS, 2011 WL 4862420, at *3 (S.D. Cal. Oct. 12, 2011) (applying equitable estoppel to allow nonsignatory to enforce arbitration agreement because business relationship was established by plaintiff signing the contract and plaintiff's

---

[11] Indeed, Plaintiffs' own allegations of concerted misconduct further estop them from denying that the relationship requirement is satisfied. *See Robinson v. Isaacs*, No. 11CV1021 JLS, 2011 WL 4862420, at *3 (S.D. Cal. Oct. 12, 2011) (applying equitable estoppel to allow nonsignatory to enforce arbitration agreement because business relationship was established by plaintiff signing the contract and plaintiff's allegations were based on defendants acting in concert); *Boston Telecomms. Group, Inc., v. Deliotte Touche Tohmatsu*, 278 F. Supp. 2d 1041, 1048 (N.D. Cal. 2003) (a non-signatory may compel arbitration "when the signatory to the contract containing an arbitration clause raises allegations of substantially interdependent and concerted misconduct by both the nonsignatory and one or more of the signatories to the contract."); *In re Apple & AT&TM Antitrust Litig*., 826 F. Supp. 2d at 1178 (estopping plaintiffs from refusing to arbitrate because "Plaintiffs themselves have alleged that there is a 'relationship' between ATTM and [non-signatories]"); *Hansen v. KPMG, LLP*, No. CV 04-10525, 2005 WL 6051705, at *3 (C.D. Cal. Mar. 29, 2005) (holding non-signatories may compel arbitration because "Plaintiff's allegations plead interdependent and concerted misconduct"). The core of Plaintiffs' Complaint is their allegations of concerted misconduct between Mutual of Omaha and Sandpoint. *See* Compl. ¶ 8 (alleging Mutual of Omaha "actively participate[d] in this unlawful scheme by working on behalf of" Sandpoint); *id.* ¶¶ 147, 153 (alleging Mutual of Omaha conspired with Sandpoint to collect unlawful debts); *id.* ¶¶ 142, 160 (Mutual of Omaha aided and abetted Sandpoint's purported violation of California usury law).

---

19

allegations were based on defendants acting in concert); *Boston Telecomms. Group, Inc., v. Deliotte Touche Tohmatsu,* 278 F. Supp. 2d 1041, 1048 (N.D. Cal. 2003) (a non-signatory may compel arbitration "when the signatory to the contract containing an arbitration clause raises allegations of substantially interdependent and concerted misconduct by both the nonsignatory and one or more of the signatories to the contract."); *In re Apple & AT&TM Antitrust Litig.,* 826 F. Supp. 2d 1168, 1178 (N.D. Cal. 2011) (estopping plaintiffs from refusing to arbitrate because "Plaintiffs themselves have alleged that there is a 'relationship' between ATTM and [non-signatories]"); *Hansen v. KPMG, LLP,* No. CV 04-10525, 2005 WL 6051705, at *3 (C.D. Cal. Mar. 29, 2005) (holding non-signatories may compel arbitration because "Plaintiff's allegations plead interdependent and concerted misconduct"). The core of Plaintiffs' Complaint is their allegations of concerted misconduct between Mutual of Omaha and Sandpoint. *See* Compl. ¶ 8 (alleging Mutual of Omaha "actively participate[d] in this unlawful scheme by working on behalf of" Sandpoint); *id.* ¶¶ 147, 153 (alleging Mutual of Omaha conspired with Sandpoint to collect unlawful debts); *id.* ¶¶ 142, 160 (Mutual of Omaha aided and abetted Sandpoint's purported violation of California usury law).Plaintiffs cannot sue Mutual of Omaha for its role in carrying out the allegedly illegal Loan Agreement while simultaneously seeking to avoid the arbitration agreement contained in that very same Loan Agreement.

### D.   The Court Should Dismiss Or Stay This Action Pending The Outcome Of The Arbitration.

Where a dispute is subject to arbitration under the terms of a written agreement, the FAA requires "stay[ing] the trial of the action until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3; *accord Bosinger v. Phillips Plastics Corp.,* 57 F. Supp. 2d 986, 994 n.7 (S.D. Cal. 1999). Where all of the claims in a complaint are subject to arbitration, courts have further

discretion under 9 U.S.C. § 3 to dismiss an action in lieu of staying it. *Sparling v. Hoffman Const. Co., Inc*., 864 F.2d 635, 638 (9th Cir. 1988); *Lewis v. UBS Fin. Servs*., 818 F. Supp. 2d 1161, 1169 (N.D. Cal. 2011). Accordingly, Mutual of Omaha respectfully requests that the Court compel arbitration and dismiss this action or, in the alternative, stay the action pending the outcome of the arbitration as required by the Loan Agreement.

## III.   CONCLUSION

For the foregoing reasons, Mutual of Omaha respectfully requests that the Court grant its motion to compel arbitration and appoint an arbitrator to hear the dispute, pursuant to 9 U.S.C. § 5. Mutual of Omaha also respectfully requests that the Court dismiss or, in the alternative, stay this action pending the outcome of the arbitration.

DATED:  January 10, 2014          Respectfully submitted,

Alan S. Petlak
Christopher J. Willis, Admitted *Pro Hac Vice*
Stefanie H. Jackman, Admitted *Pro Hac Vice*
Rosina M. Hernandez
Ross M. Speier, Admitted *Pro Hac Vice*
BALLARD SPAHR LLP


/s/ Alan S. Petlak
_____
                              Alan S. Petlak

Attorneys for Defendant
Mutual of Omaha Bank

21

1

<u>**CERTIFICATE OF SERVICE**</u>

2

I hereby certify that on this 10th day of January, 2014, I electronically

3

filed a true and correct copy of the foregoing **DEFENDANT MUTUAL OF**

4

**OMAHA BANK'S NOTICE OF MOTION AND MOTION TO COMPEL**

5

**ARBITRATION; MEMORANDUM OF POINTS AND AUTHORITIES**

6

through the Court's CM/ECF system, which will send a notice of electronic filing.

7

8

/s/ Alan S. Petlak

Alan S. Petlak

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28